(38 Misc. Rep. 649.)

### DOWNS v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County, September, 1902.)

1. MUNICIPAL CORPORATIONS—SALARY OF EMPLOYE.

Where the board of estimate of the city of New York makes an appropriation which is insufficient to pay all the sweepers of the street-cleaning department, and the commissioner fails to reduce his force so as to bring the expense within the appropriation, he has no power, under Laws 1897, c. 378, § 537, relating to leaves of absence, to induce the members of the force "to accept a leave of absence of one day each week without pay until further notice"; and where one of them, hired by the year, consequently receives less than his year's salary, he may recover any deficiency from the city.

Action by Patrick Downs against the city of New York. Judgment for plaintiff.

Thomas W. Burke (Charles Blandy, of counsel), for plaintiff.

George L. Rives, Corp. Counsel (Edward J. McGuire and Arthur Sweeny, of counsel), for defendant.

BARRETT, J. The plaintiff is a street sweeper employed by the city. He is not paid a per diem, but an annual salary. In October, 1899, this salary was fixed at $720 by the board of estimate and apportionment, pursuant to power conferred by Charter (Laws 1897, c. 378) § 536. The board, however, appropriated, for the year 1900, a sum which was insufficient to pay the prescribed salary to all the sweepers who were then employed by the street-cleaning department. This necessitated such a reduction of the street-sweeping force as

would bring the departmental expenses therefor within the appropriation. Instead of making this reduction, as was his duty, the commissioner, his general deputy, and the deputy commissioner for the borough of Brooklyn conceived the plan of evasion with which we are now dealing. It was determined to retain all the existing employés by practically reducing their salaries and compensating them for that reduction by a corresponding diminution of service. This, of course, in the absence of statutory authority, the commissioner had no power to do. The question, then, is, had the commissioner such statutory authority? It is claimed that he had, under a provision of section 537 of the charter, which reads as follows:

"No leave of absence exceeding twenty days in any one year shall be granted or allowed to any member of the uniformed force, except upon condition that such member shall waive or release not less than one-half of all salary, pay or compensation and claim thereto, or any part thereof during such absence."

Acting upon this provision, the men were informed of the dilemma, and told that, unless they agreed to take one day's leave of absence each week without pay, the commissioner would be compelled to discharge a large number of them. The men, though dissatisfied, preferred to comply with the commissioner's suggestion, rather than risk discharge; and they accordingly signed a paper, prepared by their superiors, in which they agreed "to take off one day each week without pay until further notice." Subsequently this form was changed to an agreement "to accept a leave of absence of one day each week without pay until further notice." No particular day was specified in either form, and afterwards each man's day off was prescribed by the foreman of his section. This arrangement was not, either in fact or in law, within the contemplation of the provision which has been quoted. As matter of fact, no leave of absence was in good faith requested or in good faith granted to any of the men. They were simply required, at the risk of possible discharge, to work one day less in each week, and to submit to a corresponding reduction of salary; and they yielded to this requirement. Neither the commissioner nor the men, jointly or severally, had a right thus to vary the natural operation of the law. They were all bound to submit to the direct consequence of the board's action, and that was the reduction of the force to the number of employés who could be paid the fixed salary within the appropriation. If the commissioner and the men could bargain away one day's service, without pay, in each week, why not two or more days? If such a course were permissible, the commissioner could at any time double or treble the force, and still, by similar devices, keep within the appropriation. The provision in question was never intended to authorize such a palpable evasion of the natural and legal effect of the board's action. Nor did it contemplate any similar dealing with the force collectively. The sole object was to provide for individual cases, and for exceptional conditions affecting the individual; each case to depend upon its own merits and the judgment of the commissioner with respect thereto. Any other utilization of the provision would necessarily be in bad faith quoad the law, however kindly the commissioner's motives. The

plaintiff is not precluded from a recovery because he signed the paper which the department prepared for him, nor yet by his weekly receipts. Whether he signed the paper compulsorily or voluntarily is immaterial. His legal salary still ran on. But he cannot be said to have signed the paper quite voluntarily. It is true that there was no direct threat that he, in particular, would be singled out for discharge should he fail to sign. Such, however, was the natural import of the surroundings. A reasonable man might well have understood from the character of the invitation that those who should frustrate the commissioner's plan would probably be the first to go. As to the receipts, they were purely formal, and in the nature of a departmental record. The plaintiff never read or signed them, though he understood that he was receipting for the money which he received. The custom was for the men to stand in line, and as each one was paid a departmental clerk signed his name or made a cross, the man himself simply touching the end of the pen. Even if the plaintiff had known the language of the receipts, and had signed them advisedly, they were still receipts only for what was actually paid. There was no accord and satisfaction, no account stated or settled, no release of the balance due. It is not necessary to consider the defendant's last point, namely, that the plaintiff must fail because "there were not sufficient funds in the treasury appropriated for the payment of the salaries of the sweepers at the rate claimed by the complaint," as it appears that a large part of this appropriation remaining applicable to the payment of these salaries was transferred to other accounts. Were it otherwise, however, there can be but little doubt of the plaintiff's right to recover. The defendant's motion for the direction of a verdict should be denied, and the plaintiff's motion therefor granted. The clerk will enter the decision upon these motions on the minutes, and judgment will accordingly follow in the plaintiff's favor for $135.93.

Ordered accordingly.